**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                            )
In re:                                      )
                                            )    Chapter 7
BERTHA SMITH,                               )    Case No. 12-13831-FJB
       Debtor.                           )
_____)
                                            )
BERTHA SMITH,                               )
       Plaintiff,                        )
                                            )
v.                                          )    Adversary Proceeding
                                            )    No. 12-01220-FJB
UNITED STATES DEPARTMENT                    )
OF EDUCATION,                               )
       Defendant.                        )
_____)

**DEBTOR'S PRETRIAL MEMORANDUM**

      Bertha Smith ("Plaintiff"), the Debtor in the above referenced Chapter 7 proceeding, submits this Memorandum in support of her Complaint to determine the dischargeability of her educational loans under 11 U.S.C. § 523. In support of her Complaint, Plaintiff respectfully represents as follows:

**STATEMENT OF THE FACTS**

      Plaintiff is a 46-year old single mother living in Canton, Massachusetts. Plaintiff has two children – Asia Smith, her 16-year old daughter, and Antoine R. Smith, her 26-year old son. Plaintiff supports her 16-year old daughter. Plaintiff's son has moved out of the home, and he now lives with his wife and his child. Plaintiff's daughter is a high school student at Canton High School in Canton, Massachusetts.[1]

      Plaintiff graduated from Madison Park High School in Roxbury, Massachusetts in 1986. After high school, Plaintiff was unemployed. Soon after graduation, Plaintiff signed up for a computer course at the Computer Processing Institute formerly located in Cambridge, Massachusetts. Plaintiff paid $5,000 for this course by way of a federal educational loan. When Plaintiff signed up for the course, she was told by the Computer Processing Institute that, due to her income level, she would not need to make repayments of this loan.

---

[1] Plaintiff does not have contact with Antoine's father, and she never received any financial assistance from him. Plaintiff similarly does not have contact with Asia's father, although she has recently begun to receive some financial support from Asia's father by way of his social security entitlements.

36712325_7

Plaintiff's first job after this was working at a bank in Boston as a receptionist/secretary. She did not remain in this position, however. Throughout the years, Plaintiff has worked a number of different jobs in a minor administrative capacity, including at Carney Hospital on two separate occasions and at Faulkner Hospital. She was generally able to support herself by working without state-supported cash assistance; when laid-off from a position, she was often able to collect unemployment compensation until she found a new position elsewhere.

Plaintiff also took steps to modestly improve her education. Plaintiff has taken a number of computer classes. These classes were generally free or nearly free due to her income level. Plaintiff also took coursework on and off at Quincy Junior College, totaling to approximately one year of coursework. Plaintiff's studies at Quincy Junior College were also free or nearly free due to her income level.

Plaintiff currently works in the Charlestown office as a claims reviewer for Partners HealthCare System, Inc. ("Partners"), where she has worked for approximately seven years. As a claims reviewer, Plaintiff currently earns approximately $2,195.27 per month in take-home-pay, and she also receives medical benefits. Plaintiff's job at Partners is the most lucrative position she has ever held, although it does involve a daily time consuming and expensive commute between Canton and Charlestown. Since February of 2012, Plaintiff has received $412.00 per month in Social Security benefits for her daughter, Asia. These Social Security benefits are derived from Asia's father's Social Security benefits, and Plaintiff is expected to cease receiving these benefits within two years, when Asia turns 18-years old. In addition, Plaintiff has recently begun to receive $221.00 per month for back child support from Asia's father, which is taken directly out of his Social Security benefits.

Given Plaintiff's low-income, Plaintiff and her daughter live very modestly. They live in a small apartment in Canton, Massachusetts. Because Plaintiff receives a Section 8 housing voucher, she pays only $804.00 per month in rent. Plaintiff spends an additional, estimated $2,140.00 per month on utilities, food, clothing, medical, transportation and other miscellaneous necessities for herself and her dependent daughter. Given her financial constraints, Plaintiff is very careful with her expenses and maintains a frugal lifestyle.

Plaintiff has looked for other administrative jobs for which she would be qualified that are closer to home that would save her commuting time and money on gas. Plaintiff has been unable to find such a position.

Plaintiff owns no real property, and she owns little personal property of value. Plaintiff's most valuable asset is her car, a 2008 Chevrolet Cobalt LS, with an approximate value of $6,000 - $7,000. Plaintiff did not own this asset outright until very recently; this year, she was able to use her tax refund (which she received mainly due to her qualification for the child tax credit and the earned income credit) to pay the balance on her car loan. Plaintiff pays $240.00 per month for car insurance and approximately $280.00 per month for gasoline and other maintenance expenses. Plaintiff has a free parking space at home and at work. Plaintiff's car is a necessity for herself and her daughter. Plaintiff uses the car to commute to work in Charlestown, MA. It is not practical or cost effective for Plaintiff to commute to work by public transportation. She does not have ready access to the commuter rail from her apartment; she would need to take a cab to the commuter rail. The commuter rail in Canton does not go directly to Charlestown;

36712325_7

Plaintiff would be forced to make transfers, and her commuting time would likely more than double. In addition, the commuter rail is economically inefficient. On top of the cab fare she would need to pay to get to the commuter rail station, a monthly commuter rail pass from Canton would cost Plaintiff approximately $212.00 per month. Plaintiff also uses and needs the car for errands and to allow her daughter, Asia, to participate in after-school activities and to stay late for extra help after school. Canton High School has eliminated the late-bus. Students who wish to stay late must find their own way home.

As depicted on Plaintiff's Schedules, Plaintiff is living at the edge of her means and was running a monthly deficit. As such, Plaintiff was not able to pay any amounts towards her debts. Because of her financial burden, on May 2, 2012, Plaintiff filed a voluntary petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code. Plaintiff filed a Complaint, initiating this adversary proceeding against Defendant, to determine the dischargeability of her educational loans.

This case involves two different student loan debts (collectively, the "Student Loans"). The first of these debts (the "Individual Student Loan") was incurred when Plaintiff, as described above, took a class at the Computer Processing Institute formerly located in Cambridge, Massachusetts. The original amount of the loan was $5,000.00. The current balance of this loan, as listed on Schedule F of Plaintiff's Chapter 7 Petition, is $7,423.25. The current interest rate on this loan is 7.75%

The second of these debts (the "Parent PLUS Loan") was incurred by Plaintiff on behalf of her son, Antoine. Plaintiff took out the Parent PLUS Loan in 2006 so that Antoine could attend school at Morehouse College in Atlanta, Georgia. Antoine did not co-sign the Master Promissory Note for this loan and is therefore not legally obligated to pay on the debt. Antoine attended Morehouse College for one year, and then dropped out. The original amount of the loan was $20,000.00  The current balance of this loan, as listed on Schedule F of Plaintiff's Chapter 7 Petition, is $31,481.04. The current interest rate on this loan is 7.90%.

The Parent PLUS Loan is a "Direct PLUS Loan for Parents," a type of loan offered under Defendant's Direct PLUS Program. A Direct PLUS Loan for parents allows parents to take out a student loan on behalf of their children, so that they may finance their children's education. Dept. of Educ., <u>Direct PLUS Loans for Parents</u>, Federal Student Aid, (May 29, 2012), http://www.studentaid.ed.gov. The Parent borrower is the sole obligor on the loan, and must repay the loan regardless of the student beneficiary's financial situation. <u>Id.</u> The student is not required to serve as an obligor on the loan. <u>Id.</u>

Defendant offers a number of repayment programs for its student loans; one such program, available only to certain types of student loans, is based on the income of the debtor. Under the Income Contingent Repayment Program ("ICRP"), an eligible debtor's annual loan payment is calculated based on the difference between the debtor's adjusted gross income and the federal poverty guidelines for the debtor's family size. 34 C.F.R. § 685.209 (2011). The debtor makes monthly repayments based on this formula, and the amount due is adjusted annually based on the debtor's reported household's adjusted gross income. 34 C.F.R. §§ 685.208, 685.209 (2011). Any unpaid interest is capitalized until the principal is ten percent greater than the original principal amount. 34 C.F.R. § 685.209 (2011). If the debtor has not

-3-

repaid the loan at the end of 25 years, the remaining amount of the loan is cancelled. Id. The debtor is obligated to report the loan cancellation as taxable income, and will (absent further insolvency) be liable for taxes on the amount of debt relief received. See, In re Bronsdon, 435 B.R. 791, 802 (B.A.P. 1st Cir. 2010).

The ICRP is available for Plaintiff's Individual Student Loan. Dept. of Educ., Repayment Plans, Federal Student Aid, (May 29, 2012). The ICRP, however, is not available for the Parent PLUS Loan. Id. Generally, if a parent has trouble repaying a Parent PLUS Loan, the parent's only option is to request a deferment or forbearance to temporarily stop or lower the payments on the loan. Id. The loan cannot be transferred to the student so that it becomes the student's responsibility to repay. Dept. of Educ., Direct PLUS Loans for Parents, Federal Student Aid, (May 29, 2012), http://www.studentaid.ed.gov.

Because of Plaintiff's financial situation, Plaintiff has been unable to make payments on either of the two loans. In 2011, approximately $300.00 dollars was taken out of Plaintiff's paychecks to pay on the Individual Student Loan. Plaintiff has made attempts to work out a repayment plan with Defendant. She has regularly requested forbearances on the loans. In 2011, Plaintiff also made efforts to enter into the ICRP on the Individual Student Loan. Even after a discharge of all her pre-petition debts, Plaintiff is living on the edge of her means, and she remains unable to make payments on her student loans. Under the terms of the loans, Plaintiff is obligated to pay $93.51 per month on the Individual Student Loan and $396.30 per month on the Parent PLUS Loan, for a total of $489.81 per month.

## ARGUMENT

**I. Plaintiff's Individual Student Loan and Parent PLUS Loan are fully dischargeable, because under the "totality of the circumstances," forcing Plaintiff to repay the Student Loans would impose an undue hardship on Plaintiff and her dependent daughter.**

Under Section §523(a)(8) of the United States Bankruptcy Code, "educational loans" are dischargeable in Bankruptcy if "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8) (2006). The debtor bears the burden of proving, by a preponderance of the evidence, that excepting the student loan from discharge would impose such an undue hardship. Grogan v. Garner, 498 U.S. 279, 287 (1991); Educ. Credit Mgmt. Corp. v. Savage, 331 B.R. 835 (B.A.P. 1st Cir. 2005).

The Bankruptcy Code does not define "undue hardship," but two approaches have emerged in the courts – the so-called "Brunner test" and the "totality of the circumstances" test. Bronsdon, 435 B.R. 791, 802 (B.A.P. 1st Cir. 2010). Although the First Circuit has not made a binding determination on this issue, in 2010, after carefully considering both approaches, the Bankruptcy Appellate Panel for the First Circuit explicitly adopted the "totality of the circumstances" test. Id. at 800. Under this approach, the Court must discharge Plaintiff's student loans because (1) her "past, present, and reasonably reliable future financial resources"; (2) the "reasonably necessary living expenses" of the debtor and her dependents; and (3) other "relevant facts or circumstances unique" to her case "prevent [Plaintiff] from paying the student loans in question while still maintaining a minimal standard of living even when aided by a

-4-

discharge of other prepetition debts." Id. at 798 (citing In re Kopf, 245 B.R. 731, 739 (Bankr. D. Me. 2000)).

**1. First, Plaintiff's "past, present, and reasonably reliable future financial resources" support a finding of undue hardship.**

Plaintiff has (1) no "past, present, or reasonably reliable future resources" with which to repay the student loans. Bronsdon, 435 B.R. at 800. Plaintiff currently works full-time as a claims reviewer for one of Boston's premier healthcare institutions, Partners. Plaintiff has worked in this position for over 6 years. In this position, Plaintiff earns $2,195.27 per month in take-home pay, and she also receives health insurance for herself and her daughter.

In addition, since February of 2012, Plaintiff has received $412.00 per month in Social Security benefits for her daughter, Asia, who is now 16-years old; however, these payments will cease when Asia turns 18, further reducing Plaintiff's available monthly income. Plaintiff's only other source of income, the $212.00 per month in back child support she receives from Asia's father, is intended to compensate her for the years of financial hardship she suffered in raising Asia for the past 16 years without any support from Asia's father, but still does not raise her income to a level where she would be able to repay the loans.

Plaintiff's stable earnings history supports a finding of undue hardship, as she is not suffering from temporary financial difficulty, but rather, Plaintiff has struggled for years at the same low-income level, just to get by. C.f. Ayele v. Educ. Credit Mgmt. Corp., 468 B.R. 24, 34-35 (Bankr. D. Mass 2012) (denying student loan discharge for a currently unemployed debtor who expressed an unwillingness to return to a position in his previous line of work to repay his student loans); Arroyo v. United States Dep't of Educ., 470 B.R. 18, 20 (Bankr. D. Mass 2012) (denying student loan discharge for a professional psychologist who, "[t]hroughout her career" had shown "a steady increase in professional qualifications and, with it, increased earnings").

Furthermore, Plaintiff will not have any "reasonably reliable future resources" with which to repay the Student Loans. Id. Although Plaintiff's job is secure, she is unlikely to receive any major promotions or raises. Plaintiff has worked in similar positions for over 25-years, and she has generally remained in the same low-income bracket. In fact, Plaintiff's current position is the most secure, lucrative position she has been able to obtain in her lifetime. The job is steady, she receives medical benefits, and she works for a premier, profitable institution. About once per year, Plaintiff receives a modest pay hike, but these increases are nowhere near large enough to allow for a repayment of the Student Loans. For example, this year, Plaintiff received a pay raise of roughly 2%. Plaintiff's steady low-earnings history in the past is a predictor of her future income potential. Plaintiff is only a high-school graduate; she does not have advanced degrees or professional qualifications which she is not currently utilizing. C.f. Ayele, 468 B.R. at 28, 36 (denying student loan discharge for a currently unemployed debtor who held an Associate Degree, a Bachelor of Science Degree, and a Master of Science Degree); Arroyo, 470 B.R. at 20 (denying student loan discharge for a debtor with a bachelor's degree, a master's degree, and a Ph.D. who owned and operated her own psychology practice). While Plaintiff's daughter is moving closer to majority, Plaintiff's financial circumstances are unlikely to improve when she ceases to be a dependent; although Plaintiff's

monthly living expenses will decrease, Plaintiff will no longer receive the $412.00 per month in Social Security benefits, and Plaintiff will experience an increase in her taxes, as well as suffer a decrease in her state-supported assistance. As such, Plaintiff's past, current, and reasonably reliable future financial resources indicate that she will not have the ability to repay the Student Loans.

### 2. Second, Plaintiff and her daughter's "reasonably necessary living expenses" support a finding of undue hardship.

In fact, all of Plaintiff's modest financial resources must be used to cover (2) her and her daughter's "reasonably necessary living expenses." Bronsdon, 435 B.R. at 800. Before paying off any of her pre-petition debts, Plaintiff incurs monthly expenses of $2,944.00. This figure is more than reasonable, and supports only a modest lifestyle. Plaintiff and her daughter live in a small apartment in Canton, MA, for which they receive Section 8 Assistance. A substantial amount of Plaintiff's monthly income is used to cover her car insurance and gas to allow Plaintiff to commute to work and take her daughter to school. Plaintiff and her daughter spend very little, and do not indulge in luxuries. As such, these expenses support only a "minimum standard of living." In fact, Plaintiff spends much less than the average, minimum expenses for a family of two. Under localized IRS collection guidelines, Plaintiff would be allowed necessary expenses of $4,352.00 per month, over $1,400.00 more than Plaintiff spends. See, 26 U.S.C. § 7122 (2006); Internal Revenue Service, Collection Financial Standards, Tax Information for Individuals, http://www.irs.gov/individuals/article/0,,id=96543,00.html (May 30, 2012).

Yet, despite this modest lifestyle, Plaintiff is still living at the edge of her means. As such, she would not be able to "maintain a minimal standard of living" if forced to repay $489.81 per month on the Student Loans. Bronsdon, 435 B.R. at 800.

### 3. Lastly, the relevant facts and circumstances unique to Plaintiff's case support a finding of undue hardship.

Lastly, the "relevant facts and circumstances unique" to Plaintiff's case support the discharge of the Student Loans. Id. Plaintiff works an honest job and maintains a frugal lifestyle, but has struggled for years just to get by. Plaintiff is not filing for bankruptcy to escape consumer debt accrued from living beyond her means. A large portion of Plaintiff's debt is attributable to the Student Loans, which she took out in an attempt to secure a better future for herself and her children. Plaintiff has pursued other options in an attempt to repay the Student Loans. In the past, Plaintiff has contacted Defendant's servicer to put her loans into temporary deferment. She has also attempted to reduce her financial burden by entering into the ICRP and reconsolidating the Individual Student Loan. Plaintiff is filing for Bankruptcy as a last resort. While Plaintiff has no major physical or mental limitations, she is not required to show "extraordinary circumstances" which amount to a "certainty of hopelessness." Id. at 799 (citing Hicks, 331 B.R. at 31). She is simply required to show that she will be unable to "maintain a minimal standard of living" if forced to repay her student loans, even after she is aided by the discharge of all other pre-petition debts. Id. at 800.

-6-

This Court should also consider (i) that the Individual Student Loan was taken out more than 25 years ago and Plaintiff has never been able to make payments on the loan, and (ii) that the ICRP is not an available option for the bulk of Plaintiff's student loan debt – the Parent PLUS Loan.  In considering the issue of undue hardship, many Bankruptcy Courts have been swayed by the availability of the ICRP.  See In re Paul, 337 B.R. 730, 734 (Bankr. D. Mass. 2006); Stevenson v. Educ. Credit Mgmt. Corp., 463 B.R. 586, 597-99 (Bankr. D. Mass. 2011); Arroyo, 470 B.R. at 29-31; Ayele, 468 B.R. at 32-36; see generally Bronsdon, 435 B.R. 800-04.  As the Bankruptcy Appellate Panel for the First Circuit noted, this reasoning itself is highly questionable, as the ICRP often results in an increase in the amount owed and the eventual exchange of a student loan debt for a later tax liability.  Bronsdon, 435 B.R. 802-03.  Nonetheless, the ICRP is not even an available option for Plaintiff's Parent PLUS Loan, and thus the sheer design of Defendant's program leaves debtors with no viable long-term solutions outside of Bankruptcy.[2]

Furthermore, preventing Plaintiff from discharging the Student Loans is not what Congress envisioned in enacting Section 523(a)(8).  Congress was hoping to prevent a very specific kind of abuse – wherein a student finances his education, discharges the loans in Bankruptcy, and then continues on to a very successful, lucrative career made possible by the funds the government had loaned.  See Kurt Wiese, Discharging Student Loans in Bankruptcy: The Bankruptcy Court Tests of 'Undue Hardship', 26 Ariz. L. Rev. 445, 446-447 (1984); Janice E. Kosel, Running the Gauntlet of 'Undue Hardship' – the Discharge of Student Loans in Bankruptcy, 11 Golden Gate Univ. L. Rev. 457, 459 (1981).   This is clearly not the case for Plaintiff.  Plaintiff filed for Bankruptcy after years of struggling with her finances and there is no lucrative financial future awaiting Plaintiff on the horizon.

## **CONCLUSION**

Plaintiff filed for Bankruptcy because she needed a financial fresh start for herself and her daughter.  Plaintiff is a hardworking mother, but she barely gets by.  Even after all other pre-petition debts are discharged, Plaintiff is already living, albeit extremely frugally, at the edge of her means, and thus is unable to make any payments on the Student Loans without sacrificing some of the bare necessities of life for herself and her daughter.  Plaintiff (1) does not have any "past, current, or reasonably reliable future financial resources" with which to repay the Student loans, and in fact, Plaintiff's financial resources will likely go down (not up) significantly in the next two years when her daughter turns 18-years old.  All of Plaintiff's resources must be used to (2) cover her and her family's reasonably necessary living expenses.  Bronsdon, 435 B.R. at 800.  Furthermore there are (3) "relevant facts and circumstances unique" to Plaintiff's case which favor the discharge of Plaintiff's Student Loans.  Id.  Thus, under the "totality of circumstances," Plaintiff would suffer an "undue hardship" if forced to repay the Student Loans.

---

[2] If this Court finds, despite the misgivings expressed by the Bankruptcy Appellate Panel for the First Circuit, that Plaintiff is not entitled to a discharge of the Individual Student Loan and must instead enter into the ICRP, Plaintiff would ask this Court to use its equitable powers under §105(a) to enter an order prospectively discharging any student loan debt Plaintiff is unable to repay following participating in the ICRP.  See Ayele, 468 B.R. at 36; Stevenson, 463 B.R. at 599.

Plaintiff respectfully prays that this Court enter an Order declaring the Student Loan debts of the Plaintiff to be dischargeable in this bankruptcy case and grant the Plaintiff other such further relief to which she may be justly entitled.

Dated: Boston, Massachusetts
July 10, 2013

Respectfully submitted,

*/s/ Steven T. Hoort*
Steven T. Hoort (BBO No. 239380)
R. Hardin Matthews (BBO No. 325020)
Alyssa Kollmeyer (BBO No. 682437)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050

E-mail:
 steven.hoort@ropesgray.com
 hardin.matthews@ropesgray.com
 alyssa.kollmeyer@ropesgray.com

COUNSEL TO THE DEBTOR