UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
In re:                              )
                                    )      Chapter 7
BERTHA SMITH,                       )      Case No. 12-13831-FJB
          Debtor.                   )
_____)
                                    )
BERTHA SMITH,                       )
          Plaintiff,                )
                                    )
v.                                  )      Adversary Proceeding
                                    )      No. 12-01220-FJB
UNITED STATES DEPARTMENT            )
OF EDUCATION,                       )
          Defendant.                )
_____)

### DEBTOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

       Bertha Smith ("Plaintiff"), the Debtor in the above referenced Chapter 7 proceeding, submits these proposed findings of fact and conclusions of law in support of her Complaint to determine the dischargeability of her educational loans under 11 U.S.C. § 523. In support of her Complaint, Plaintiff respectfully represents as follows:

### STATEMENT OF PROPOSED FACTS

       1.    Plaintiff is a 46-year-old single mother living in Canton, Massachusetts (Trial Tr. 7:18-22, July 17, 2003). Plaintiff has two children – Asia Smith, her 16-year-old daughter born on 01/18/97 (Trial Tr. 30:10-11), and Antoine R. Smith, her 26-year-old son (Trial Tr. 8:3-8, 29:17-18). Plaintiff supports her 16-year-old daughter. Plaintiff's son has moved out of the home, and he now lives with his wife and his child (Trial Tr. 29:19-22). Plaintiff's son also is unemployed and provides no support to the Plaintiff (Trial Tr. 29:23-24, 30:7-8). Plaintiff's daughter is a high school student at Canton High School in Canton, Massachusetts.

       2.    Plaintiff graduated from Madison Park High School in Roxbury, Massachusetts in 1986 (Trial Tr. 9:3-6, 16:1-4). After high school, Plaintiff was unemployed. Soon after graduation, Plaintiff signed up for a computer course at the Computer Processing Institute formerly located in Cambridge, Massachusetts (Trial Tr. 8:25 – 9:1-9). Plaintiff paid approximately $5,000.00 for this course by way of a federal educational loan (Trial Tr. 16:5-8).

       3.    Plaintiff initially was on welfare (Trial Tr. 14:18-21). Plaintiff's first job was working at a bank in Boston as a receptionist/secretary (Trial Tr. 9:19-23). She did not remain in this position, however. Throughout the years, Plaintiff has worked a number of different jobs in a minor administrative capacity, including at Carney Hospital and at Faulkner Hospital (Trial Tr.

9:24 – 10:1-8).  She was generally able to support herself by working without state-supported cash assistance; when laid-off from a position, she was often able to collect unemployment compensation until she found a new position elsewhere (Trial Tr. 14:18-23).

      4.      Plaintiff also took steps to modestly improve her education.  Plaintiff has taken a number of computer classes (Trial Tr. 8:25 – 9:1-9).  Plaintiff also took coursework on and off at Quincy Junior College, totaling to approximately one year of coursework (Trial Tr. 9:10-11).

      5.      Plaintiff currently works in the Charlestown office as a claims reviewer for Partners HealthCare System, Inc. ("Partners"), where she has worked for approximately seven years (Trial Tr. 9:21. 10:10, 26:11-13).  As a claims reviewer, Plaintiff currently earns approximately $2,195.27 per month in take-home-pay, and she also receives medical benefits (Joint Ex. 1, at 21).  Plaintiff's job at Partners is the most lucrative position she has ever held, although it does involve a daily time consuming and expensive commute between Canton and Charlestown (Trial Tr. 10:11-13, 22:23-25).  Since February of 2012, Plaintiff has received $412.00 per month in Social Security benefits for her daughter, Asia.  These Social Security benefits are derived from Asia's father's Social Security benefits, and Plaintiff is expected to cease receiving these benefits within one and one-half years, when Asia turns 18-years old (Trial Tr. 15:3-12).  In addition, Plaintiff has recently begun to receive $221.00 per month for back child support from Asia's father, which is taken directly out of his Social Security benefits (Trial Tr. 15:13-21).

      6.      Given Plaintiff's low-income, Plaintiff and her daughter live very modestly.  They live in a small apartment in Canton, Massachusetts.  Because Plaintiff receives a Section 8 housing voucher, she pays only $804.00 per month in rent (Trial Tr. 21:4-16).  Plaintiff spends an additional, estimated $2,140.00 per month on utilities, food, clothing, medical, transportation and other miscellaneous necessities for herself and her dependent daughter (Joint Ex. 1, at 22).  Given her financial constraints, Plaintiff is very careful with her expenses and maintains a frugal lifestyle.

      7.      Plaintiff has looked for other administrative jobs for which she would be qualified that are closer to home that would save her commuting time and money on gasoline.  Plaintiff has been unable to find such a position (Trial Tr. 24:8-20).

      8.      Plaintiff owns no real property, and she owns little personal property of value (Joint Ex. 1, at 6-10).  Plaintiff's most valuable asset is her car, a 2008 Chevrolet Cobalt LS, a compact car with an approximate value of $6,000.00 - $7,000.00 (Joint Ex. 1, at 9).  Plaintiff did not own this asset outright until very recently; this year, she was able to use $2,000.00 of her tax refund (which she received mainly due to her qualification for the child tax credit and the earned income credit) to pay the balance on her car loan (Trial Tr. 28:3-15).  Plaintiff pays $240.00 per month for car insurance and approximately $280.00 per month for gasoline and other maintenance expenses (Joint Ex. 1, at 22).  Plaintiff's car is a necessity for herself and her daughter. Plaintiff uses the car to commute to work in Charlestown, MA.  It is not practical or cost effective for Plaintiff to commute to work by public transportation.  She does not have ready access to the commuter rail from her apartment; she would need to take a cab to the commuter rail.  The cost of taxis alone would be $24.00 a day, or approximately $480.00 a month.  The commuter rail in Canton does not go directly to Charlestown; Plaintiff would be forced to make

transfers, and her commuting time would likely more than double. In addition, the commuter rail is economically inefficient. On top of the cab fare she would need to pay to get to the commuter rail station, a monthly commuter rail pass from Canton would cost Plaintiff approximately $212.00 per month. Plaintiff also uses and needs the car for errands and to allow her daughter, Asia, to participate in after-school activities and to stay late for extra help after school. Canton High School has eliminated the late-bus. Students who wish to stay late must find their own way home (Trial Tr. 22:9 – 25:6).

9. As depicted on Plaintiff's Schedules, Plaintiff is living at the edge of her means and was running a monthly deficit (Joint Ex. 1, at 22). As such, Plaintiff was not able to pay any amounts towards her student loan debts. Because of her financial burden, on May 2, 2012, Plaintiff filed a voluntary petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code (Joint Ex. 1, at 1-3). Plaintiff filed a Complaint, initiating this adversary proceeding against Defendant, to determine the dischargeability of her educational loans (Adversary Compl., Aug. 31, 2012).

10. This case involves two different student loan debts (collectively, the "Student Loans") (Adversary Compl. ¶¶ 4-5). The first of these debts (the "Individual Student Loan") was incurred when Plaintiff, as described above, took a class at the Computer Processing Institute formerly located in Cambridge, Massachusetts (Trial Tr. 8:25 – 9:1-9). The original amount of the loan was approximately $5,000.00 (Trial Tr. 16:5-8). The current balance of this loan, as listed on Schedule F of Plaintiff's Chapter 7 Petition, is $7,423.25 (Joint Ex. 1, at 17). The current interest rate on this loan is 7.75% (Joint Ex. 19, at 4).

11. The second of these debts (the "Parent PLUS Loan") was incurred by Plaintiff on behalf of her son, Antoine (Trial Tr. 16:17-20). Plaintiff took out the Parent PLUS Loan in 2006 so that Antoine could attend school at Morehouse College in Atlanta, Georgia (Trial Tr. 29:1-10). Antoine did not co-sign the Master Promissory Note for this loan and is therefore not legally obligated to pay on the debt (Joint Ex. 14). Antoine attended Morehouse College for one year, and then dropped out (Trial Tr. 29:11-16). The original amount of the loan was approximately $20,000.00 (Trial Tr. 29:1-3). The current balance of this loan, as listed on Schedule F of Plaintiff's Chapter 7 Petition, is $31,481.04 (Joint Ex. 1, at 17). The current interest rate on this loan is 7.90% (Joint Ex. 19, at 5).

12. The government lists the total amount due for the student loans, including interest through 9/24/2012, as $40,149.48 (Joint Ex. 13).

13. Defendant offers a number of repayment programs for its student loans; one such program, available only to certain types of student loans, is based on the income of the debtor. Under the Income Contingent Repayment Program ("ICR"), an eligible debtor's annual loan payment is calculated based on the difference between the debtor's adjusted gross income and the federal poverty guidelines for the debtor's family size. 34 C.F.R. §§ 685.208, 685.209 (2011).

14. The Parent PLUS Loan is a "Direct PLUS Loan for Parents," a type of loan offered under Defendant's Direct PLUS Program (Joint Ex. 14).

-3-

15. The ICR is available for Plaintiff's Individual Student Loan. Dep't of Educ., Federal Student Aid, Repayment Plans, http://www.direct.ed.gov/RepayCalc/dlindex2.html, (last updated Feb. 22, 2013). The ICR, however, is not available for the Parent PLUS Loan. Id; see also Joint Ex. 19, at 1 ("You may not repay parent Direct PLUS Loans under the ICR or IBR Plan."). Generally, if a parent has trouble repaying a Parent PLUS Loan, the parent's only option is to request a deferment or forbearance to temporarily stop or lower the payments on the loan. Id. The loan cannot be transferred to the student so that it becomes the student's responsibility to repay. Dep't of Educ., Federal Student Aid, PLUS Loans, http://studentaid.ed.gov/types/loans/plus, (last visited July 30, 2013).

16. Because of Plaintiff's financial situation, Plaintiff has been unable to make payments on either of the two loans. In 2011, approximately $300.00 dollars was taken out of Plaintiff's paychecks to pay on the Individual Student Loan (Trial Tr. 37:6-8). Plaintiff has made attempts to work out a repayment plan with Defendant. She has regularly requested forbearances on the loans (Joint Ex. 21). In 2011, Plaintiff also made efforts to enter into the ICR on the Individual Student Loan (Trial Tr. 37:6-13; Joint Ex. 19).

17. Plaintiff is currently obligated to pay $93.51 per month on the Individual Student Loan and $396.30 per month on the Parent PLUS Loan, for a total of $489.81 per month (Joint Ex. 19, at 3).

18. Even after a discharge of all her pre-petition debts, Plaintiff is living on the edge of her means, and she remains unable to make payments on her student loans.

19. The Plaintiff is performing at her potential. Her current position is the best position she has ever had (Trial Tr. 10:11-13). Notwithstanding, her earnings have not increased, but decreased over the past 4 years. The Plaintiff's yearly income for the years 2009-2012 as listed on her federal income tax returns shows that in 2012 she is still making approximately the same as she did in 2010 but somewhat less than in 2009 (Trial Tr. 42:23-25 – 43:1-7):

**Bertha Smith Yearly Income for 2009-2012**

| Year | Income Listed on Tax Return | Exhibit |
|---|---|---|
| 2009 | $36,078.00 | Joint Ex. 9, at 3 (BS00158) |
| 2010 | $34,741.00 | Joint Ex. 10, at 3 (BS00164) |
| 2011 | $31,785.00 | Joint Ex. 11, at 4 (BS00171) |
| 2012 | $34,292.00 | Joint Ex. 12, at 2 |

20. The Plaintiff's Schedule I (included in Joint Ex. 1) shows the Plaintiff's monthly income after tax deductions plus the $412.00 per month she receives from Social Security for her daughter Asia, equals $2,607.27 per month. When the $221.00 per month for back child support is added, Plaintiff's current total monthly financial resources equal $2,828.27. When Plaintiff

-4-

37178740_5

loses the $412.00 per month from Social Security when her daughter Asia turns 18 in January, 2015, her total monthly financial resources will shrink to $2,416.00 (Trial Tr. 19:22-25 – 20:1-19).

21. The Plaintiff's Schedule J (included in Joint Ex. 1) shows the Plaintiff's monthly expenses, if the monthly student loan payments were included, total $3,814.40. After adjusting for an increase in her rent, correcting the student loan monthly payment amounts and the elimination of her car payment, the Plaintiff's monthly expenses would be $3,433.00, if the student loan payments were included, or $2,944.00 excluding the student loan payments (Trial Tr. 20:21-25 – 22:1-7).

22. The government points to the Plaintiff's tax refunds as a potential source of repayment of the student loans. The Plaintiff uses her tax refunds to pay off or catch up on her bills (Trial Tr. 28:14-15). The Plaintiff's tax refunds, the largest of which in the past 4 years is under $3,300.00, is less than the $412.00 per month in social security benefits ($4,944.00 per year) that the Plaintiff will lose when her daughter turns 18 in January of 2015. The Plaintiff's federal tax returns show that a substantial portion of the Plaintiff's tax refunds arises from a $1,000.00 per year Child Tax Credit and from the Earned Income Credit (Joint Exs. 9, 10, 11, 12). Plaintiff will no longer be entitled to the Child Tax Credit after 2013 or to the Earned Income Credit after 2014. See infra Proposed Conclusions of Law, ¶5, nn.2, 3.

23. The Plaintiff contributes approximately $25.00 per week to her 401(k) (Trial Tr. 27:2-6). After she loses $412.00 per month from social security benefits when her daughter turns 18 in January 2015, it is unlikely she will have sufficient financial resources to continue this modest contribution towards her retirement.

24. Based on the totality of the circumstances, the Plaintiff cannot make repayment of her student loans without reducing her and her daughter's minimal standard of living and causing Plaintiff and her daughter undue hardship.

## STATEMENT OF PROPOSED CONCLUSIONS OF LAW

1. Under Section §523(a)(8) of the United States Bankruptcy Code, "educational loans" are dischargeable in Bankruptcy if "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8) (2006). The debtor bears the burden of proving, by a preponderance of the evidence, that excepting the student loan from discharge would impose such an undue hardship. Grogan v. Garner, 498 U.S. 279, 287 (1991); Educ. Credit Mgmt. Corp. v. Savage, 331 B.R. 835 (B.A.P. 1st Cir. 2005).

2. This court will evaluate Plaintiff's claim under the "totality of the circumstances" test for determining whether excepting educational loans from discharge would impose an undue hardship. In re Bronsdon, 435 B.R. 791, 798-800 (B.A.P. 1st Cir. 2010) (applying the totality of the circumstances test). Under this approach, the Court must discharge Plaintiff's student loans when (1) the Plaintiff's "past, present, and reasonably reliable future financial resources"; (2) the "reasonably necessary living expenses" of the Plaintiff and her dependents; and (3) other "relevant facts or circumstances unique" to her case "prevent [Plaintiff] from paying the student

loans in question while still maintaining a minimal standard of living even when aided by a discharge of other prepetition debts." Id. at 798 (citation omitted).

3. Under the first prong of the "totality of the circumstances" test, the Court finds that Plaintiff's "past, present, and reasonably reliable future financial resources" will be insufficient to allow her to pay her student loans while maintaining a minimal standard of living. At present, Plaintiff's monthly income is approximately $2,828.00 while her monthly expenditures are approximately $2,944.00 ($804.00 for rent and $2,140.00 per month on utilities, food, clothing, medical, transportation and other miscellaneous necessities for herself and her dependent daughter). Thus, Plaintiff is currently operating at a monthly deficit even before any potential student loan payments are considered.

4. Plaintiff's past earnings history indicates that there is little likelihood that her earnings will increase substantially in the future. Between 2009 and 2012, her income has been within a narrow band between $31,785.00 and $36,078.00, with her highest earning year being 2009. Unlike many student borrowers, Plaintiff is only a high-school graduate; she does not have advanced degrees or professional qualifications which she is not currently utilizing. C.f. Ayele v. Educ. Credit Mgmt. Corp., 468 B.R. 24, 34-35 (Bankr. D. Mass 2012) (denying student loan discharge for a currently unemployed debtor who held an Associate Degree, a Bachelor of Science Degree, and a Master of Science Degree). Plaintiff's job is stable, but offers little opportunity for "a steady increase in professional qualifications and, with it, increased earnings." Arroyo v. United States Dep't of Educ., 470 B.R. 18, 20 (Bankr. D. Mass 2012).

5. Furthermore, the record demonstrates that Plaintiff's financial position is likely to become more, not less, precarious, in the future. Plaintiff's daughter is moving closer to majority, and Plaintiff's financial circumstances are likely to deteriorate when her daughter ceases to be a dependent. Although Plaintiff's monthly living expenses will decrease, Plaintiff will suffer a decrease in her state-supported assistance, as she will no longer receive the $412.00 per month in Social Security benefits. Plaintiff will also experience a substantial increase in her tax liability, as she will have one less dependent exemption and she will no longer qualify for either the Child Tax Credit[1] or the Earned Income Tax Credit.[2] As such, a review of Plaintiff's past, current, and reasonably reliable future financial resources indicates that she will not have the ability to repay the Student Loans at any point in the future "while maintaining a minimal standard of living." The first prong of the totality of the circumstances test thus supports a finding of undue hardship.

---

[1] The Child Tax Credit is only available for taxpayers with a qualifying child under age 17 at the close of the taxable year. See I.R.C. §§ 24(a), 24(c) (2013). Thus, Plaintiff will lose her eligibility for the Child Tax Credit in 2014 when Asia turns 17 years old.

[2] The Earned Income Credit is only available to taxpayers whose adjusted gross income ("AGI") is below certain thresholds. See I.R.C. §32. For 2013, the IRS states that the Earned Income Tax Credit will be available to single taxpayers with one qualifying child with AGIs under $36,920 and to single taxpayers with no qualifying children with AGIs under $13,980. See Internal Revenue Service, Preview of 2013 EITC Income Limits, Maximum Credit Amounts and Tax Law Updates, http://www.irs.gov/Individuals/Preview-of-2012-EITC-Income-Limits,-Maximum-Credit--Amounts-and-Tax-Law-Updates (last updated July 8, 2013). In prior years, the Plaintiff had received the Earned Income Tax Credit because she had one qualifying child, Asia. However, when Asia ceases to be a dependent for tax purposes, Plaintiff's AGI will likely exceed the threshold for the Earned Income Tax Credit.

6.       The Court finds that under the second prong of the "totality of the circumstances" test, the Plaintiff and her daughter's "reasonably necessary living expenses" are reasonable and support only "a minimal standard of living." Before repaying any of her pre-petition debts, Plaintiff incurs monthly expenses of $2,944.00, an amount greater than her current income. This figure is more than reasonable, and supports a very modest lifestyle. Plaintiff and her daughter live in a small apartment in Canton, MA, for which they receive Section 8 Assistance. A substantial amount of Plaintiff's monthly income is used to cover her car insurance and gasoline to allow Plaintiff to commute to work and take her daughter to school. In fact, Plaintiff spends much less than the average, minimum expenses for a family of two. Under localized IRS collection guidelines, Plaintiff would be allowed necessary expenses of $4,352.00 per month, over $1,400.00 more than Plaintiff spends. See 26 U.S.C. § 7122 (2006); Internal Revenue Service, Collection Financial Standards, http://www.irs.gov/individuals/article/0,,id=96543,00.html (last updated May 15, 2013).

7.       Yet, despite this modest lifestyle, Plaintiff is still living at the edge of her means. As such, she would not be able to "maintain a minimal standard of living" if forced to repay $489.81 per month on the Student Loans in addition to her reasonably necessary living expenses. Bronsdon, 435 B.R. at 800. The second prong of the totality of the circumstances test thus supports a finding of undue hardship.

8.       Under the third and final prong of the "totality of the circumstances" test, the Court finds that there are "relevant facts and circumstances unique" to Plaintiff's case that provide further support for the discharge of the Student Loans. With regard to the Individual Student Loan, Plaintiff took out the loan 25 years ago and has never been in a financial position to make payments on the loan. Plaintiff has pursued other options in an attempt to repay the Student Loans. In the past, Plaintiff has contacted Defendant's servicer to put her loans into temporary deferment. She has also attempted to reduce her financial burden by entering into the ICR and reconsolidating the Individual Student Loan. With regard to the Parent PLUS Loan – the bulk of Plaintiff's student loan debt – Plaintiff's situation is even more precarious given that ICR is not an available option. The availability of ICR is a relevant factor in determining whether or not a student loan is dischargeable. See In re Paul, 337 B.R. 730, 734 (Bankr. D. Mass. 2006); Stevenson v. Educ. Credit Mgmt. Corp., 463 B.R. 586, 597-99 (Bankr. D. Mass. 2011); Arroyo, 470 B.R. at 29-31; Ayele, 468 B.R. at 32-36. However, it should not be the determinative factor. See In re Bronsdon, 435 B.R. at 802-03 (the availability of the ICR should not operate as an automatic bar to a finding of undue hardship, since the ICR often results in an increase in the amount owed and the eventual exchange of a student loan debt for a later tax liability). Where, as here, ICR is not even an available option for the Parent PLUS Loan, the third factor weighs particularly heavily in favor of discharge.[3]

---

[3] If this Court finds, despite the misgivings expressed by the Bankruptcy Appellate Panel for the First Circuit, that Plaintiff is not entitled to a discharge of the Individual Student Loan and must instead enter into the ICR, Plaintiff would ask this Court to use its equitable powers under §105(a) to enter an order prospectively discharging any student loan debt Plaintiff is unable to repay following participating in the ICR. See Ayele, 468 B.R. at 36; Stevenson, 463 B.R. at 599. To the extent that the availability of the ICR makes the Individual Student Loans nondischargeable, Plaintiff's Parent PLUS Loan is not affected by the ICR and should be discharged.

9. Because Plaintiff has never been and is unlikely to ever be in a position to repay either her Individual Student Loan or the Parent PLUS Loan, the third prong of the totality of the circumstances test thus supports a finding of undue hardship.

10. The Court finds that permitting Plaintiff to discharge the Student Loans is consistent with the Congressional intent underlying Section 523(a)(8).  In passing Section 523(a)(8), Congress expressed its intent to prevent a very specific kind of abuse – wherein a student finances his education, discharges the loans in Bankruptcy, and then continues on to a successful, lucrative career made possible by the funds the government had loaned.  See Kurt Wiese, Discharging Student Loans in Bankruptcy: The Bankruptcy Court Tests of 'Undue Hardship', 26 Ariz. L. Rev. 445, 446-47 (1984); Janice E. Kosel, Running the Gauntlet of 'Undue Hardship' – the Discharge of Student Loans in Bankruptcy, 11 Golden Gate Univ. L. Rev. 457, 459 (1981).  This is clearly not the case for Plaintiff.  Plaintiff is a 46-year-old woman who has managed to move herself and her family from Roxbury to Canton, to stay off welfare, and to maintain a marginal lifestyle only, and who filed for Bankruptcy after years of struggling with her finances.  There is no lucrative financial future awaiting Plaintiff.

11. Plaintiff has satisfied her burden of demonstrating that the payment of the Student Loans would be an undue hardship and, therefore her Student Loans are dischargeable.

Dated: Boston, Massachusetts
July 31, 2013

Respectfully submitted,

/s/ Steven T. Hoort
Steven T. Hoort (BBO No. 239380)
R. Hardin Matthews (BBO No. 325020)
Alyssa Kollmeyer (BBO No. 682437)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel:  (617) 951-7000
Fax: (617) 951-7050

E-mail:
steven.hoort@ropesgray.com
hardin.matthews@ropesgray.com
alyssa.kollmeyer@ropesgray.com

COUNSEL TO THE DEBTOR

-8-