## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| BERTHA SMITH, ) | Case No. 12-13831-FJB |
| Debtor. ) | |
| ) | |
| BERTHA SMITH, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | No. 12-01220-FJB |
| UNITED STATES DEPARTMENT ) | |
| OF EDUCATION, ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Bertha Smith ("Plaintiff"), the Debtor in the above referenced Chapter 7 proceeding, submits this Reply in Response to Defendant United States Department of Education's Proposed Findings of Fact and Conclusions of Law ("DOE's Proposed Findings") in support of her Complaint to determine the dischargeability of her educational loans under 11 U.S.C. § 523.

### INTRODUCTION

Plaintiff submits this opposition to the DOE's Proposed Findings in order to set the record straight regarding several important questions of fact and law raised in this proceeding. As set forth below, the DOE's Proposed Findings impermissibly raise, for the first time, objections to the substance of Plaintiff's Schedule J (Current Expenditures of the Individual Debtor) submission. Furthermore, the Department of Education ("Defendant") paints an inaccurate picture of Plaintiff's present financial situation and an unrealistically optimistic picture of her future financial situation. Finally, Defendant misapplies the relevant legal precedent and proposes legal conclusions for which there is no support in the case law of this, or any other, Circuit.

### ARGUMENT

**I.   THE DOE'S PROPOSED FINDINGS SHOULD BE DISREGARDED TO THE EXTENT THAT THEY IMPERMISSIBLY RAISE OBJECTIONS TO PLAINTIFF'S SCHEDULE J SUBMISSION**

In the DOE's Proposed Findings, the Defendant, for the first time in this proceeding, questions Plaintiff's Schedule J expenditures for utilities, food, clothing, medical and dental expenses, and transportation. *See* DOE's Proposed Findings, at 9 ("It is not clear how much she is spending on utilities . . . [The amount she is spending on food] appears somewhat inflated. . . . [The amount she is spending on clothing] also appears somewhat inflated. . . . It is not clear how much she is including for medical expenses . . . . It is not clear how much she is including for transportation expenses."). Schedule J was filed with the Court as a joint submission of Plaintiff and Defendant, without any objections. Furthermore, Defendant raised no objections on these grounds during the trial, either during the cross-examination of Plaintiff or during closing argument.

Defendant has had numerous opportunities to challenge or object to Plaintiff's Schedule J, and has failed to do so until this very late stage in this proceeding, after a trial has taken place and the evidence is closed. At this point, the Court should find that Defendant has waived any and all objections to Plaintiff's Schedule J submission, and Defendant's silence should be construed as an agreement with Plaintiff's figures. *See In re Turner*, No. 09–18816–WCH, 2010 WL 2509966, at *3 (Bankr. D. Mass. June 17, 2010) (construing Trustee's failure to object to certain figures in Debtor's Schedule I as an agreement with those figures). Furthermore, since Plaintiff based her projected monthly expense total of $2,944 – as presented in her pretrial brief – entirely on her submissions in Schedule J, any objections to that estimate by Defendant should also be deemed waived.[1]

## II.   DEFENDANT'S ARGUMENTS REGARDING PLAINTIFF'S FINANCIAL SITUATION ARE NOT BASED ON THE EVIDENCE

Defendant's arguments about Plaintiff's current and future financial position are based on a series of assumptions unsupported by any factual basis in the record. Defendant exaggerates Plaintiff's current income by including in it the value of her employer sponsored benefits. Defendant unrealistically imagines a hypothetical future where Plaintiff's income rises higher and higher, despite the clear evidence in the record which shows that her income is actually almost certain to decrease in the future. In this hypothetical future, Plaintiff works more and more hours at a higher and higher hourly rate of pay in her current job, finds an additional part-time job, and also obtains gifts from her 16-year-old daughter and her unemployed, married 26-year-old son. There is no evidentiary support for this hypothetical future.

### A.   Plaintiff's current and future income will be insufficient to cover her minimal living expenses

Throughout the DOE's Proposed Findings, Defendant presents Plaintiff's income in a misleading manner. Defendant states that Plaintiff "earned" $50,186.09 in 2012 and $47,375.68 in 2011. *See* DOE's Proposed Findings, at 1, 7. These numbers ignore $15,590.92 in before-tax

---

[1] Plaintiff's projected monthly expense total of $2,944 is based on an $804 rent payment, along with $2,140 per month on utilities, food, clothing, medical, transportation and other necessities listed in Schedule J. This projected monthly expense total specifically does not include the $368 per month car payment that Plaintiff no longer has to make. The only other adjustment to the Schedule J submissions in Plaintiff's pretrial brief was to increase her rent payment estimate from $740 to $804, reflecting her current rent. At trial, Plaintiff testified that her current rental expense is $804, Trial Tr. 7:25 – 8:1. Defendant did not raise the issue during cross.

deductions in 2011 and $15,894.36 in before-tax deductions in 2012, of which all but $710.00 are deductions for the value of Plaintiff's employer provided health, dental and vision insurance benefits.[2] *See* Joint Exs. 3, 4. The value of these benefits is not paid to Plaintiff. The relevant measure of Plaintiff's income is the income reported in her tax returns from 2009-2012. *See* Joint Exs. 9-12.

Furthermore, by conveniently failing to mention Plaintiff's income from 2009 and 2010, Defendant is able to make the remarkable claim that there is an "upward trend in [Plaintiff's] pay." DOE's Proposed Findings, at 7. In fact, a review of Plaintiff's tax returns makes it clear that there is no upward trend in her pay, which has fluctuated within a narrow band between $31,785.00 and $36,078.00 over the past four years. Most tellingly, her two highest earning years were actually 2009 and 2010, when she earned $36,078.00 and $34,741.00, respectively. *See* Joint Exs. 9-12. Relatedly, Defendant's argument that there is an upward trend in Plaintiff's earnings ignores another clear fact: Plaintiff's income is almost certain to *decrease substantially* in the future, as her daughter grows older and Plaintiff's tax liability increases and her receipt of Social Security and child support benefits ends. *See* Debtor's Proposed Findings of Fact and Conclusions of Law, Statement of Proposed Conclusions of Law, ¶ 5.

As discussed in Part I *supra*, Plaintiff's monthly expenses are $2,944.00. Her monthly income, including the child support benefits she receives, is only $2,828.27. *See* Joint Ex. 1, at Schedule I. Plaintiff is already operating at a fiscal deficit, even before considering any student loan payments, and her fiscal situation is highly unlikely to improve in the near future. Contrary to Defendant's unsupported assertions, the record on this point is quite "clear." DOE's Proposed Findings, at 8. Therefore, the Court should find that Plaintiff's current income is insufficient to cover her current expenditures.

### B. Plaintiff is working at her capacity in a full-time job

Defendant also places great stress on the idea that Plaintiff's future income will rise because she should be expected to increase the number of hours she works at her current job, obtain an additional part-time job, or both. *See* DOE's Proposed Findings, at 10-12. In support of this contention, Defendant relies primarily on the Bankruptcy Appellate Panel of the First Circuit's decision in *Smith v. Educ. Credit Mgmt. Corp.* (*In re Smith*), 328 B.R. 605, 612 (B.A.P. 1st Cir. 2005).[3] However, the facts in *Smith* are clearly distinguishable from the Plaintiff's

---

[2] The remaining $710.00 in pre-tax deductions are Plaintiff's contributions to her retirement plan. *See* Joint Exs. 3, 4. Tellingly, Plaintiff contributed $630.00 to her retirement plan in 2011 and only $80.00 in 2012, reflecting her declining financial circumstances. *See id*.

[3] In addition to *Smith*, Defendant relies on two other decisions, which are also inapplicable to Plaintiff's case. Defendant points to *Educ. Credit Mgmt. Corp. v. Savage (In re Savage)*, 311 B.R. 835, 839-40 (B.A.P. 1st Cir. 2004). While the factual circumstances in *Savage* do bear a superficial similarity to the facts in this proceeding (older single mother working 37.5 hours a week), it is important to note that the Court's decision not to discharge the Debtor's student loans in that case was based on the Court's finding that the Debtor had over $300 in disposable income each month, which would be more than sufficient to meet her student loan obligations especially given the availability of the ICR. *See Id.* at 842 ("Given the fact that at least $322.50 (private school tuition and books) in expense can be eliminated from Ms. Savage's budget without creating undue hardship, her student loans cannot be discharged under § 523(a)(8)."). Defendant also cites *Wegrzyniak v. United States*, 241 B.R. 689, 695 (Bankr. Idaho 1999), where Debtor was a teacher who did not work during the summer in order to spend extra time with her family.

-3-

37491446_5

situation here. The Debtor in *Smith* was working only 8-12 hours a month at the time of her trial, and she testified at trial that she expected to be able to increase her working hours to 25-30 hours a week in the future. *Id.* It is obvious that these facts are completely inapplicable to the facts in this proceeding, where Plaintiff works full-time with a daily 2-hour commute, has a stable salary of approximately $34,000 and modest expenses commensurate with a minimal standard of living.[4]

Here, Plaintiff is working a full-time job and spends two hours on her commute each and every day. Plaintiff has been consistently working at the level of her capability. Further, Defendant chose not to pursue this line of questioning at trial, and there is no factual basis in the record that this would be a feasible option for Plaintiff. Even if Defendant had pursued this line of questioning, the facts would not have supported this position. The likely evidence would show that, at best, Plaintiff could obtain a part-time, perhaps seasonal, hourly, low-wage job that would not markedly improve her financial situation, and would certainly not make up for the decrease in her income that Plaintiff will experience when her daughter reaches majority plus the amount of the student loan payments. This argument should be disregarded for lack of any factual basis.

    **C.**    **Any projections regarding future contributions to Plaintiff by Plaintiff's children are baseless**

In the DOE's Proposed Findings, Defendant makes the argument that the Court should consider potential gifts from Plaintiff's 26-year-old son, Antoine, and her 16-year-old daughter, Asia, as part of Plaintiff's future income. DOE's Proposed Findings, at 12. This argument is unsupported by any factual basis in the record. At trial, Plaintiff testified that her son is married with a child and currently unemployed. Trial Tr. 28:23 – 30:3. He lives apart from Plaintiff, with his wife and child, and does not assist her financially in any way. *Id.* Similarly, Plaintiff testified that her daughter is a student who does not contribute anything financially towards her living expenses. *Id.* at 32:1 – 32:3.

When Defendant raised this argument again in his closing argument, the following colloquy occurred with the Court:

> THE COURT: Is it appropriate under either test for me to consider income from an adult child?

---

*See id.* at 691-92. Plaintiff, of course, works year round, without any summer breaks during which to take on part-time work.

[4] *Educ. Credit Mgmt. Corp. v. Kelly*, 312 B.R. 200 (B.A.P. 1st Cir. 2004) provides a far better analog to Plaintiff's situation. In *Kelly*, the Bankruptcy Appellate Panel applied the totality of the circumstances test and affirmed the Bankruptcy Court's decision to discharge approximately $63,000 of the Debtor's $80,000 in student loan debts. *Id.* at 208-09. The Court based it decision on the finding that "Debtor's income had been relatively constant at about $30,000 per year" and "Debtor's expenses [were] modest and indicate a minimal standard of living." *Id.* at 206-07. Furthermore, the Court also found that Debtor's access to a cell phone, internet or cable television was compatible with the conclusion that her "expenses are modest and indicate a minimal standard of living." *Id.* at 207.

      MR. DONATO:  I think it is, and I have no problem acquiescing to the, the, all circumstances test as opposed to, which is the one that has, has been applied in Massachusetts and in our Circuit.

      THE COURT:  It's the one I've applied --

      MR. DONATO:  Yeah.

      THE COURT:  -- but, but under that test, I haven't been asked to consider income that's earned by an adult child who I have evidence, you know, has his own family. So I have no evidence concerning whether he has any net income available to contribute to her, her monthly needs.

      MR. DONATO:  I -- I -- well, then, then I will -- because I didn't offer evidence, I, I don't think I can --

      THE COURT:  Right.

      MR. DONATO:  -- argue that.

      THE COURT:  I didn't have anything --

      MR. DONATO:  Yeah.

      THE COURT:  -- from you on that --

      MR. DONATO:  Yeah.

      THE COURT:  -- that's for sure. Yeah, uh-huh.

*Id.* at 39:5 – 40:1.  In other words, Defendant specifically acknowledged at trial that he had offered no factual evidence, and as a consequence could not make the argument, that hypothetical future contributions from the Plaintiff's adult child should be considered as part of Plaintiff's future income.  This argument should be disregarded.

### III.   THE ABSENCE OF THE INCOME CONTINGENT REPAYMENT PROGRAM AS A REPAYMENT OPTION FOR PLAINTIFF'S PARENT PLUS LOAN CONSTITUTES EXTRAORDINARY CIRCUMSTANCES WEIGHING IN FAVOR OF A FINDING OF UNDUE HARDSHIP

      Defendant argues that this Court should discount the fact that Plaintiff's Parent PLUS Loan is not eligible for an Income Contingent Repayment Program ("ICR") because the Plaintiff is eligible for the "Extended Repayment Plan" or the "Graduated Repayment Plan."  DOE's Proposed Findings, at 13.  Again, this is a line of questioning Defendant chose not to pursue at trial.  Defendant presented no evidence as to what monthly amounts would be required under either the Extended Repayment Plan or the Graduated Repayment Plan.

-5-

      Neither the Extended Repayment Plan, nor the Graduated Repayment Plan offer the flexibility of ICR.  Both plans require monthly payments until the full amount of the loan is repaid, regardless of the borrower's ability to pay, and neither option provides for loan forgiveness in the event that the borrower is unable to repay the loan.  Defendant presented no evidence as to the size of the monthly payments that would be required under either plan.  The record shows that Plaintiff has no available income for making any monthly payment.  The absence of the ICR for the Parent PLUS Loan is, thus, an extraordinary factor under the "totality of the circumstances" test for undue hardship.  *See* Debtor's Proposed Findings of Fact and Conclusions of Law, Statement of Proposed Conclusions of Law, ¶ 8.

## **CONCLUSION**

      As demonstrated during trial, Plaintiff has met her burden and demonstrated that it would be an undue hardship for her to have to repay her Student Loans.  Accordingly, the Court should find that her Student Loans are dischargeable.

Dated: Boston, Massachusetts  
       August 12, 2013

Respectfully submitted,

*/s/ Steven T. Hoort*  
Steven T. Hoort (BBO No. 239380)  
R. Hardin Matthews (BBO No. 325020)  
Alyssa Kollmeyer (BBO No. 682437)  
ROPES & GRAY LLP  
Prudential Tower  
800 Boylston Street  
Boston, Massachusetts 02199-3600  
Tel:  (617) 951-7000  
Fax: (617) 951-7050

E-mail:  
    steven.hoort@ropesgray.com  
    hardin.matthews@ropesgray.com  
    alyssa.kollmeyer@ropesgray.com

COUNSEL TO THE DEBTOR