UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| In re<br><br>BERTHA SMITH,<br><br>                              Debtor<br><br>BERTHA SMITH,<br><br>                              Plaintiff<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>                              Defendant | Chapter 7<br>Case No. 12-13831-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 12-1220 |

### MEMORANDUM OF DECISION

This matter was held for trial on the complaint of chapter 7 debtor Bertha Smith (the "Debtor") for a declaration under 11 U.S.C. §523(a)(8) that her debts to the United States Department of Education (the "DOE"), which debts arise from an individual student loan and a Parent PLUS loan, both held by the DOE, are dischargeable because it would be an undue hardship for her to repay them. The DOE opposes the complaint. For the reasons set forth below, judgment shall enter for the DOE on one loan and for the Debtor on the other loan.

**PROCEDURAL HISTORY**

The Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on May 2, 2012. The Debtor filed the complaint commencing this adversary proceeding on August 31, 2012. The matter was tried on July 17, 2013. In a joint pre-trial statement, the parties submitted a list of facts to which they have stipulated. At trial, the Debtor presented herself as the sole witness. The DOE cross-

examined the Debtor and did not present any witnesses.  The parties jointly offered twenty-four joint exhibits that were admitted into evidence.

**FACTUAL BACKGROUND**

a.    **The Debtor's Education and Work Experience**

The Debtor, forty-six years old at trial, is single and resides in a rented apartment in Canton, Massachusetts with her sixteen year-old daughter.  The Debtor also has a twenty-six year-old son, who lives with his wife and child separately from the Debtor.

The Debtor graduated from Madison Park High School in Roxbury, Massachusetts in 1986.  After graduating from high school, she was unemployed for a time and was, for a time, a welfare recipient.  Eventually, she completed a computer training course at the Computer Processing Institute formerly located in Cambridge, Massachusetts, for which she incurred a federal educational loan of approximately $5,000.00.  The Debtor also periodically completed coursework at Quincy Junior College, totaling approximately one year of coursework.

Her work history was, for many years, unstable and characterized by periods of unemployment.  When unemployed the Debtor generally received unemployment benefits in order to keep her family afloat.  At various times, she has worked at Bank of America, Carney Hospital, Faulkner Hospital, and Partners Health Care System, Inc.  She is currently employed full-time as a claims reviewer at Partners Health Care in Charlestown, where she has worked for over six years.  Her current position is the highest paying position she has ever held.  She offered no evidence of having any medical conditions that prevent her from earning a living.  Nor did she offer evidence that her daughter suffers from any chronic illness or disability.  The Debtor currently receives support from her daughter's father.

**b.**     **The Debtor's Student Loans**

Two student loan debts are the subject of this adversary proceeding. As described above, the first (the "First Student Loan") originated when the Debtor borrowed funds to pay for a course at the Computer Processing Institute soon after graduating from high school. The original loan amount was approximately $5,000.00. The Debtor has never made payments on this loan. The parties have stipulated that the balance owing to the DOE on the First Student Loan is, with accrued interest, $7,423.25. The current rate of interest on this loan is 7.75%; the current monthly payment on the loan is $93.51. The Debtor testified that, at least once in the past, the DOE garnished her wages on account of the First Student Loan "for maybe two paychecks." No evidence was offered as to any current or ongoing attempts by the DOE to collect on the loan by wage garnishment.

This loan is eligible for the DOE's Income Contingent Repayment Program (ICRP). The ICRP is part of the William D. Ford Federal Direct Repayment Loan Program (the "Ford Program"), which includes the ICRP and the Income-Based Repayment Plan (collectively, the "Federal Repayment Programs"). Under the ICRP, an eligible debtor's annual loan payment is based on the difference between the debtor's adjusted gross income and the federal poverty guidelines for the debtor's family size. It was unclear from the evidence whether the Debtor had been offered the ICRP option or that she was familiar with the details of that option.

In 2006, the Debtor took out a second student loan, a Federal Direct Parent PLUS Loan (the "Second Student Loan") in the amount of $22,000.00 for the benefit of her son, to enable him to attend Morehouse College in Georgia. The Debtor is the sole obligor on this loan. The parties have stipulated that the balance of the Second Student Loan owing to the DOE is $31,481.04. The current rate of interest on this loan is 7.90%. The current monthly payment on this loan is approximately $396.30. Because this loan is a Parent PLUS loan, it is *not* eligible for the ICRP, the Federal Repayment Programs, or any other income dependent repayment option.

The DOE contends that the Second Student Loan is eligible for either the DOE's Extended Repayment Plan or the Graduated Repayment Plan.  For this point, the DOE cites to the following excerpt from an Addendum to the Direct Plus Loan Application and Master Promissory Note that the Debtor completed in September 2006:

> **4. Borrower's Rights and Responsibilities Statement, Item 15: Repaying your loan.**  *Effective for Direct PLUS Loans that enter repayment on or after July 1, 2006*, the following changes apply to the Graduated Repayment Plan and Extended Repayment Plan:
>
> **Graduated Repayment Plan.**  If you choose this plan, your payments will usually be lower at first, and will then increase over time.  No single payment will be more than 3 times greater than any other payment.  Under this plan, you must repay your loan in full within 10 years (not including periods of deferment and forbearance) from the date the loan entered repayment.  If your loan has a variable interest rate, we may need to adjust the number or amount of your payments to reflect changes in the interest rate.
>
> **Extended Repayment Plan.**  You may choose this plan only if (1) you had no outstanding balance on a Direct Loan Program as of October 7, 1998 or on the date you obtained a Direct Loan Program on or after October 7, 1998, and (2) you have an outstanding balance on Direct Loan Program loans that exceeds $30,000.  If you are eligible for and choose this plan, you will make monthly payments based on fixed annual or graduated repayment amounts and will repay your loan in full over a period not to exceed 25 years (not including periods of deferment and forbearance) from the date your loan entered repayment.  The maximum period of time you have to repay your loans will vary depending on the amount of your outstanding loan debt.  Your payments must be at least $50 per month and will be more, if necessary, to repay the loan within the required time period.  If your loan has a variable interest rate, we may need to adjust the number or amount of your payments to reflect changes in the interest rate.

No additional evidence or explanation regarding these repayment programs, the Debtor's eligibility for either of these programs, or the Debtor's potential monthly payments under either program was offered at trial.

4

**c.     The Debtor's Children**

The debtor's son did not graduate from college. He is currently twenty-six years old, does not live with the Debtor, is married, and has a child. He is currently unemployed but has worked in the past in the cafeteria of a Boston hospital. The Debtor has not spoken to her son's father in years, but she believes that her son does have contact with him. She believes the father is unemployed. She has never received support from him.

The Debtor's daughter is sixteen years old. Her father lives in North Carolina. According to the schedule of personal property that the Debtor filed in her bankruptcy case, he owes the Debtor over $16,000.00 in past-due child support payments. The Debtor receives monthly payments of $412 from the Social Security Administration that derive from the Social Security benefits received by her daughter's father. These payments will end when the Debtor's daughter turns eighteen on January 18, 2015. Additionally, the Debtor receives $221.00 per month from the Social Security Administration for the past-due child support owed to the Debtor. During the school year, the Debtor's daughter periodically participates in after-school activities. During the summer, she sometimes works on a part-time basis, but she does not contribute anything financially toward living expenses.

**d.     The Debtor's Current Income and Expenses**

In their joint-pretrial statement the parties stipulated to the following:

> Currently, [the Debtor] earns $2,195.27 per month as a claims reviewer for Partners HealthCare System, Inc. and receives $412.00 per month in Social Security assistance for Plaintiff's dependent daughter, age [16], for a total monthly income of $2,607.27

These are the numbers reflected in Debtor's schedule of current income. Debtor has since begun receiving the additional $221.00 per month from the Social Security Administration for past-due child support, bringing her total monthly income to $2,828.00.

5

The Debtor testified that she receives an annual raise from Partners Health Care, but she did not provide an amount.  Last year, the Debtor received a tax refund of approximately $3,400, which she used to pay off her car loan as well as other bills.  The Debtor testified that she receives an annual tax refund, although it may not always be as high as $3,400.

As for expenses, the Debtor lives in Section 8 housing and therefore pays $804 per month for rent for herself and her daughter.  She spends an additional $2,140 per month on utilities, food, clothing, medical, transportation, and miscellaneous necessities for herself and her daughter.  I find that the Debtor lives frugally in light of her limited resources.  Her total monthly expenses, before including her student loan obligations, amount to $2,944.

The monthly amount due on the First Student Loan is approximately $93.51.  The monthly amount due on the Second Student Loan is approximately $396.30.  Thus the Debtor's total monthly expenses, including student loan payments, are approximately $3,433.81.

The Debtor owns a 2008 Chevy Cobalt, an economy car, which she uses to commute to work, to take her daughter to school, and to run errands. The Debtor's schedule of monthly expenses indicates that she spends $280 per month on gasoline and maintenance of the vehicle and $240 per month for insurance.  Her commute to work is approximately one hour.  If she did not have a car, she would have to take a cab to the commuter rail in order to get to work, but such a commute would be both significantly longer and more expensive.  Additionally, without her car, she would be unable to pick up her daughter from school, which would prevent her daughter from participating in after-school activities.  The Debtor has persistently but unsuccessfully tried to find a job closer to her home, to reduce her commuting time and expense.

The Debtor also contributes approximately $25 per week to a retirement account.  This amount is not included in the above totals as either income or an expense because the money is deducted directly from the Debtor's paycheck.  The retirement account contains $5,736.

The parties appear to disagree about the amount of income that the Debtor receives, but the disagreement is not real.  The DOE argues that she earned $50,186.09 in 2012 and $47,375.68 in 2011.  The Debtor points out that these numbers ignore the $15,590.92 in before-tax deductions in 2011 and $15,894.36 in before-tax deductions in 2012.  These deductions, except for $710, pay for the employer provided health, dental and vision insurance.  The remaining $710 in pre-tax deductions are contributed to her employer-sponsored retirement plan.  I agree with the Debtor that the relevant number is what the Debtor has available each month to pay the two student loans.

**POSITIONS OF THE PARTIES**

The Debtor argues that her past, present, and reasonably reliable future financial resources are insufficient to allow her to pay her student loans while maintaining a minimal standard of living.  The Debtor notes that with an approximate monthly income of $2,828 and approximate monthly expenses of $2,944, she is currently operating at a monthly deficit even before any potential student loan payments are considered.  This running deficit exists despite the fact that debtor has been steadily employed for over six years at the most lucrative position she has ever held.  Debtor further argues that with her limited education, her income is unlikely to significantly increase in the future.  Rather, her financial circumstances may actually deteriorate when her daughter reaches the age of majority.  While the Debtor's monthly living expenses will decrease, she will no longer receive a $412 monthly payment in Social Security benefits.  Additionally, regarding her future tax liability, the Debtor will have one less dependent exemption, and she will no longer qualify for either the Child Tax Credit or the Earned Income Tax Credit.

The DOE responds with two arguments.  First, the DOE argues that there is substantial doubt as to the Debtor's claim that her expenses exceed her income.  The DOE notes several of the Debtor's expenses that might be considered superfluous, or at least for which the amount the Debtor has listed in her schedules might be considered excessive: $80 per month for internet and cable, $1,000 per month

7

for food, $175 for clothing, $40 per month for medical and dental despite pre-tax contributions to medical, dental, and vision plans through her employer, $240 per month for car insurance, and $280 per month for gasoline and vehicle maintenance. Additionally, the DOE notes that the $25 per week the Debtor contributes to a Vanguard Roth retirement plan does not appear to be included in the income amount. Further, the DOE notes that Debtor's expenses will decrease when her daughter turns eighteen.

Second, the DOE argues that even if the Debtor's current expenses exceed her monthly income, the Debtor has still failed to carry her burden of establishing undue hardship. Merely showing that past and current expenses exceed past and current income does not constitute a showing of undue hardship. Rather, the DOE argues, the Debtor has the burden of showing that her future prospects warrant a discharge. In arguing that the Debtor has not met this burden, the DOE notes several potential improvements to the Debtor's financial picture: she receives an annual raise, she could increase her work hours, her daughter could contribute to household expenses, her expenses will decrease when her daughter turns eighteen, her annual tax refund could be attributed to student loan payments, and the Debtor's son, for whose benefit the Debtor incurred the Second Student Loan, could contribute to the loan payments. Finally, the DOE argues that the First Student Loan is eligible for the ICRP while the Second Student Loan is eligible for the Extended Repayment Plan or the Graduated Repayment Plan.

In response to the DOE's argument about contributions from the Debtor's son, the Debtor, in a reply brief, correctly points out that DOE's counsel specifically acknowledged at trial that he had offered no factual evidence, and as a consequence could not make the argument, that hypothetical future contributions from the Plaintiff's adult child should be considered as part of the Plaintiff's future income. As the DOE did not offer any evidence on this point, in my ensuing analysis, I give no weight to the DOE's argument that the Debtor's son could contribute toward the Debtor's student loan payments. Indeed, this argument by the government is even more perplexing given its counsel's concession at trial

8

that it offered no evidence of the son's ability to contribute to the Debtor's financial needs.  Finally, the evidence adduced at trail about the son's ability to contribute—he did not graduate from Morehouse College, now has a family of his own to support, and is unemployed—suggests that he has no ability to contribute to his mother's family income.

**ANALYSIS**

Student loan debt is not dischargeable in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).  In the instant case, the bulk of the Debtor's student loan obligation derives from a Parent PLUS loan for which the Debtor is the sole obligor.  Courts that have examined the issue of a non-student, sole-obligor have generally found that § 523(a)(8) prevents discharge unless the Debtor can show undue hardship.  *In re Votruba*, 310 B.R. 698, 704 (Bankr. N.D. Ohio 2004) *citing In re Hamblin*, 277 B.R. 676 (Bankr. S.D. Miss.2002); *In re Clark*, 273 B.R. 207 (Bankr. N.D. Iowa 2002); *In re Uterhark*, 185 B.R. 39 (Bankr. N.D. Ohio 1995); *In re Hawkins*, 139 B.R. 651 (Bankr. N.D. Ohio 1991); *In re Hudak*, 113 B.R. 923 (Bankr. W.D. Pa.1990); *In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D. Cal. 1989); *In re Martin*, 119 B.R. 259 (Bankr. E.D. Okl. 1990); *see also In re Wills*, 08-80404-FJO-07, 2010 WL 1688221 (S.D. Ind. Apr. 23, 2010).

The Debtor bears the burden of proof on the issue of undue hardship.  *Nash v. Connecticut Student Loan Foundation (In re Nash)*, 446 F.3d 188, 190-91 (1st Cir. 2006). "Proof of undue hardship is generally found only in 'truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents.'"  *In re Sanborn*, 431 B.R. 5, 8 (Bankr. D. Mass. 2010), *citing ECMC v. Bronsdon (In re Bronsdon)*, 421 B.R. 27, 32 (D. Mass. 2009).

The Bankruptcy Code does not define "undue hardship."  In previous cases involving a determination of undue hardship, I have applied the totality of the circumstances approach as

articulated by the Bankruptcy Appellate Panel for the First Circuit in *Lorenz v. Am. Educ. Servs.*, 337 B.R. 423, 430 (B.A.P. 1st Cir. 2006):

> The "totality of the circumstances" analysis requires a debtor to prove by a preponderance of evidence that (1) his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses; and (3) other relevant facts or circumstances unique to the case, prevent him from paying the student loans in question while still maintaining a minimal standard of living, even when aided by a discharge of other pre-petition debts.

*See, e.g.*, *In re Nargassans*, 10-12766-FJB, 2013 WL 3545846, *1, *5 (Bankr. D. Mass. July 11, 2013); *In re Arroyo*, 470 B.R. 18, 26 (Bankr. D. Mass. 2012); *Sanborn*, 431 B.R. at 8-9. In the recent decision of *Conway v. Nat'l Collegiate Trust (In re Conway)*, 2013 WL 4437070 (B.A.P. 8th Cir. Aug. 21, 2013), the Eighth Circuit Bankruptcy Appellate Panel quoted the Eighth Circuit Court of Appeals in stating that "[s]imply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged." *Id*. at 5 (quoting *Educ. Credit Mgm't Corp. v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009)). This is the test that I have applied to section 523(a)(8) discharge cases, and I continue to believe it is the right test to apply in order to meet the legislative goals of the statute.

Under the totality of the circumstances test, the initial focus is on the debtor's current and future ability to repay the student loans, but the Court may also consider the facts and circumstances unique to each case and measure the impact of these facts and circumstances on the debtor's ability to pay now and in the future. *Nargassans*, 2013 WL 3545846 at *5. The court may consider all relevant evidence: the debtor's income and expenses; the debtor's health, age, education, number of dependents and other personal or family circumstances; the amount of the monthly payment required; the impact of the general discharge under Chapter 7; and the debtor's ability to find a higher paying job, move, or cut living expenses. *Arroyo*, 470 B.R. at 26, *citing Lorenz v. Am. Educ. Servs.*, 337 B.R at 430-31. More fully fleshed out, the totality of the circumstances test rests on one question: "Can the debtor

10

now, and in the foreseeable near future, maintain a reasonable, minimal standard of living for the debtor and the debtor's dependents and still afford to make payments on the debtor's student loans?" *Bronsdon*, 435 B.R. at 801, *quoting Hicks v. Educ. Credit Mgmt. Corp. (In re Hicks)*, 331 B.R. 18, 32 (Bankr. D. Mass.2005)

Applying the totality of the circumstances test, I conclude that the Debtor has not met her burden of establishing that excepting her student loan debt from discharge would impose an undue hardship as to the First Student Loan. As to the Second Student Loan, which is not subject to any income dependent repayment program, however, I conclude that the Debtor has met her burden of establishing that repayment of that loan would result in undue hardship to the Debtor and her minor daughter.

The evidence indicates and I find that the Debtor's current expenses exceed her income even before accounting for payments on her student loans. In the past, I have rejected the argument that insufficiency of income, by itself, constitutes undue hardship. *Sanborn*, 431 B.R. at 11. The disproportion between an insufficient income and outstanding student debt poses a hardship, but not one that is exceptional or undue within the meaning of 523(a)(8). *Id.* The hardship alleged must be attributable to truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents. *TI Federal Credit Union v. DelBonis*, 72 F.3d at 927. Financial adversity alone is not sufficient to have a student loan debt discharged on the basis of undue hardship. *Arroyo*, 470 B.R. at 30, *citing In re Brunell*, 356 B.R. 567, 578 (Bankr. D. Mass. 2006).

The Debtor has not persuaded this Court that she cannot reasonably be expected to make any repayments on her First Student Loan in the foreseeable future. I cannot say with certainty that the Debtor has exhausted her earning potential. The Debtor receives an annual raise which will marginally increase her income. She receives an annual tax refund in addition to her normal monthly income. In the past, she has demonstrated an ability to use her tax refund to pay down other debts, including her

car loan which is no longer outstanding (although with the amount of commuting the Debtor does, her vehicle will soon need to be replaced).  The financial impact of the Debtor's daughter reaching majority may be mixed.  The Debtor will lose the $412 monthly Social Security payment and a substantial income tax credit (and with it a significant portion of her tax refund), but the Debtor's expenses may decrease, or at least her daughter may be able to contribute toward expenses.  Again, I received little or no evidence on this issue.  It is by no means certain or even likely that the Debtor will, in the near and medium term, be able to make payments on the First Student Loan.   However, it is also not clear that the Debtor will be unable to make payments on this loan, which provided the Debtor with an education that has no doubt aided her in earning the income she has received in her career.

Moreover, while the Debtor testified that in the past, the DOE garnished her wages for her failure to pay her First Student Loan, there is no evidence of any active attempts by the DOE to collect on either student loan debt in a way that imposes undue hardship on the Debtor or affects the Debtor's ability to provide for herself or her daughter.

Finally, what tips the balance against discharge of the First Student Loan is the Debtor's ability to participate in an Income Contingent Repayment Plan.  The First Student Loan is eligible for a Federal Repayment Program.  Under such a program the payments on this loan could be reduced in accordance with the Debtor's ability to pay.  Additionally, the Federal Repayment Programs allow forbearance, deferments, and the discharge of any remaining liability after participation in the plan for twenty-five years.  In applying the totality of the circumstances test, a debtor's eligibility to participate in an ICRP is one of many factors to consider in evaluating the totality of the debtor's circumstances, but it is not determinative.  *See Bronsdon*, 435 B.R. at 801.  In past cases, I have found the availability of the ICRP to be an influential factor in determining that excepting a debtor's student loan debt from discharge would not impose an undue hardship.  *Nargassans*, 2013 WL 3545846 at *6 ("Given the availability of these programs, it appears that nondischarge of the loan debt likely would not impose on the Debtor a

payment obligation that is greater than his ability to pay during periods of continuing disability or recurring unemployment."); *Arroyo*, 470 B.R. at 31 ("[Debtor's] debt is mammoth, but it appears that she would qualify for an ICRP, under which she would pay the debt only to the extent of her ability to pay, with the balance to be discharged at the end of its term, apparently without adverse tax consequence."); *Sanborn*, 431 B.R. at 10-11 (Bankr. D. Mass. 2010) ("Under these programs, the Debtor would be eligible for these reductions of her payment obligation during the persistence of her disability. If at the end of the twenty-five year term of the program any balance remained owing, the balance would be administratively discharged. Given the availability of these programs, it appears that nondischarge of the loan likely would not impose on the Debtor a payment obligation that is greater than her ability to pay during periods of continuing disability, and the Court therefore concludes that the continuance of her medical disability for the indefinite future has not been shown to constitute an undue hardship."). The availability of the ICRP for the First Student Loan supports a finding that excepting the debt from discharge will not impose an undue hardship on the Debtor.

As I have stated in the past, should the DOE reject the Debtor's application for an ICRP or similar program, or should the DOE subject the Debtor's wages or tax refunds to garnishment during the repayment period such that the Debtor is unable to subsist and care for herself and her daughter, she could submit another request for discharge of the student loans and review of the Debtor's situation pursuant to the Debtor's properly renewed request at that time. *Brunell*, 356 B.R. at 581, *citing Nash*, 446 F.3d at 194; 11 U.S.C. 523(b); *Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 875 (Bankr. N.D. Ohio) (noting that a decision as to the dischargeability of a student loan obligation is not res judicata).

The Second Student Loan—which paid for the Debtor's son to attend one year of college, after which he dropped out—is not eligible for the ICRP because it is a Parent PLUS Loan, and its ineligibility for the ICRP is a key distinction. The DOE argues that the Debtor may be eligible for a Graduated Repayments Plan or an Extended Repayment Plan, which could allow the Debtor to stretch out her

13

payments over a longer period of time.  The Debtor responds, and I find, that these programs do not offer the flexibility and potential for discharge offered by the ICRP and that she is currently not earning enough each month to even cover her current reasonable expenses.  Thus, an extended repayment schedule offers her cold comfort—namely, the option to stretch out her payments on the Second Student Loan.  But she simply does not have the income to support repayment of that loan, especially as this loan is over and above her obligation on the First Loan.

The evidence establishes that this debtor has consistently made significant efforts to maintain sufficient income to support her family.  She is not "intentionally underemployed."  Indeed, she has consistently found work after periods of unemployment.  See *Conway*, 2013 WL 4437070 at *8.  This is commendable for a single mother with little or no support from the fathers of her children.  Still, she has not been able to increase her income very significantly over the past several years.  Thus, without an ICRP-type option, her prospects of earning enough to repay the Second Student Loan are sufficiently bleak to warrant a finding of undue hardship.

This ruling is consistent with those of other courts that have faced this issue.  In *In re Votruba*, 310 B.R. 698, 708 (Bankr. N.D. Ohio), the court cited the unavailability of the ICRP as supportive of a partial discharge of the debtor's student loans.  In *Votruba*, however, the court also found that the debtor had not fully minimized his expenses and had a large asset, a retirement account, available to him, which supported only a partial discharge.  In *In re Groves*, 298 B.R. 673, 686-88 (W.D. Mo. 2008), the bankruptcy judge allowed certain loans to be discharged—Sallie Mae loans that were not subject to ICRP-type programs—and declined to discharge other loans that offered an ICRP alternative.  The court reasoned that "it is the availability of the income contingent option that makes a portion of the ECMC loans nondischargeable[.]"  *Id*.  I agree with these judges that, in a case that presents facts such as those presented here, the unavailability of an ICRP-type option can be the decisive factor in establishing undue hardship.

**CONCLUSION**

Upon application of the totality of the circumstances test, I find that the Debtor has failed to demonstrate by a preponderance of the evidence that excepting her First Student Loan from discharge would impose upon her and her dependent daughter an undue hardship, but that she has established by the appropriate standard that repayment of her Second Loan would result in undue hardship. A separate judgment will enter accordingly.


Date: October 1, 2013                              _____
                                                   Frank J. Bailey
                                                   United States Bankruptcy Judge